IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1100-06






JAMES THOMAS LAPOINTE, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S AND STATE'S 


PETITIONS FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


WILLIAMSON COUNTY





 Keller, P.J., delivered the unanimous opinion of the Court.


O P I N I O N 



 Does the rule requiring a "hearing" before determining whether to admit evidence of the alleged
victim's past sexual history contemplate an adversarial proceeding? And if it does, and if the trial court fails
to afford such a proceeding, may the appellate court order a retrospective hearing? We answer both of
these questions "yes," and finding that the trial court conducted the retrospective hearing properly, we
affirm the judgment of the court of appeals.

I. BACKGROUND


 Appellant was convicted of a variety of offenses committed against his estranged wife: one count
of aggravated kidnapping, one count of assault family violence (second offense), and three counts of
aggravated sexual assault. At trial, defense counsel sought to cross-examine the victim regarding her prior
sexual history for the purpose of "exploring a bias or motive for testifying." Defense counsel told the trial
judge that he believed the victim had "engaged in sex with multiple partners at various times." The State
objected on the basis of Texas Rule of Evidence 412. The trial judge decided to address the admissibility
issue in an in camera hearing where only the judge and the victim were present. The judge specifically
declined to allow defense counsel to question the witness for the purpose of making a bill of exception, but
the trial judge did offer to ask the victim any questions the defense wished to submit.

 After the prosecution's direct examination of Nurse Kathleen Gann, the defense sought to cross-examine her on the victim's prior sexual history. Again, the trial judge refused to permit defense questioning
of the witness for the purpose of creating a bill of exception. Instead, the trial judge adhered to the same
procedure used with the victim: defense counsel submitted questions and the hearing was held with only
the trial judge and the witness being present. Defense counsel requested that the trial judge inquire about
"deep vaginal bruising" and whether this bruising was consistent with the use of "sex toys" and whether the
victim had a history of sex-toy use with the defendant. When asked for clarification, defense counsel said
he specifically wanted to know if the victim engaged in sex with a particular person and "used an object
that was deeply plunging" into her sex organ.

 Defense counsel was permitted to make a bill of exception regarding certain other matters with
some relevance to this discussion. A portion of a medical report was read into the record, and later the
entire report was submitted as an exhibit. The report indicated that the victim suffered from bipolar
disorder and had a problem with alcohol.

 Appellant complained on appeal that the trial court erred in excluding defense counsel from the in
camera hearings. The court of appeals agreed, holding that the trial court's procedure violated both Rule
412 and the Confrontation Clause of the United States Constitution, and deprived appellant of his
constitutional right to the effective assistance of counsel. (1) Concluding that the trial court's errors "prevented
the development of a record on which [the court] might determine that the error was harmless beyond a
reasonable doubt," the court of appeals reversed the trial court's judgment and remanded the case for a
new trial. (2) 

 After the State filed a motion for rehearing, the court of appeals withdrew this opinion and
substituted a new opinion. (3) In the new opinion, the court of appeals altered the remedy, choosing instead
to abate the appeal and remand the case for a retrospective in camera hearing that permitted the presence
of the parties and the questioning of the witnesses by the parties' attorneys. (4)

 On the day the hearing was scheduled by the trial court, appellant requested a continuance to
prepare. The trial court granted a continuance as to the victim but denied the continuance with respect to
the nurse because she currently lived out-of-state and the prosecution had produced her for the hearing. 
Defense counsel was able to question Nurse Gann about any knowledge she had acquired about the
victim's past sexual history, but the trial judge prohibited certain questions that he perceived had nothing
to do with Rule 412. These latter, prohibited questions included asking (1) whether the victim took a
certain medication prescribed for bipolar disorder, (2) the symptoms of bipolar disorder, including sexual
activity, (3) whether the victim ever conveyed that she had been suicidal, and (4) whether the victim
mentioned any custody issues regarding her son.

 At the continued hearing, defense counsel was given wide latitude in cross-examining the victim.
The trial judge overruled all but two of the prosecutor's objections. In the first sustained objection, the trial
judge prohibited defense counsel from having the victim read from a medical report that had been entered
as an exhibit because the judge believed that the exhibit spoke for itself. The second sustained objection
was to questions relating to the victim's alcohol use. (5)

 After cross-examining the victim, defense counsel requested that Gann be recalled as a rebuttal
witness. The trial judge initially denied the request, but he amended the ruling to allow defense counsel to
submit proposed questions that the trial judge would review to determine whether to go through the time
and expense of recalling the out-of-state witness. No questions were ever submitted.

 When the court of appeals received the case back on appeal, appellant advanced several
arguments relating to the retrospective hearing. He argued that the trial court had no jurisdiction to conduct
the hearing because a petition for discretionary review was pending in this Court, that the trial court erred
in prohibiting some of defense counsel's questions, and that the trial court erred in refusing to allow defense
counsel to recall Nurse Gann. (6) The court of appeals rejected all of these claims. It held that the petition
for discretionary review was not proper because the abatement order was interlocutory, that the trial court
properly limited the hearing to the victim's past sexual history, and that appellant failed to preserve for
review any issue with regard to recalling the nurse. This last claim was rejected because appellant failed
to submit any questions and because his original motion for continuance did not specify "what records he
was seeking, how those records would be useful, or whether he could have obtained those records for the
subsequent hearing" involving the victim. (7) After this discussion, the court of appeals concluded that the trial
court's error in excluding the defendant and his counsel from the in camera hearings at trial was cured by
the two-part retrospective hearing. (8) Addressing the merits of the Rule 412 issue, the court of appeals held
that appellant failed to elicit any admissible evidence at the retrospective hearing. (9) Addressing and rejecting
appellant's other points of error, the court of appeals then affirmed the conviction. (10) 

 Both parties petitioned for discretionary review. We granted appellant's first and third grounds
for review and all four of the State's grounds. In his first ground, appellant claims that a retrospective
hearing was not a proper remedy for the trial court's error in refusing to conduct a proper in camera
hearing at trial. In his third ground, he claims that the trial judge did not conduct the retrospective hearing
properly, because some questions were disallowed and because he was neither granted a continuance with
respect to the nurse nor permitted to recall her at the second part of the hearing. (11) In its first two grounds
for review, the State complains that the court of appeals failed to address its arguments that appellant failed
to preserve any constitutional claim at trial. In its third and fourth grounds, the State contends that the court
of appeals erred in holding that Rule 412 requires that the parties be present and that counsel be permitted
to question the witnesses.

II. ANALYSIS


A. Rule 412's in camera hearing 


 Rule 412(c), which sets forth the procedures for determining the admissibility of evidence of prior
sexual history, provides:

Procedure for Offering Evidence. If the defendant proposes to introduce any
documentary evidence or to ask any question, either by direct examination or
cross-examination of any witness, concerning specific instances of the alleged victim's past
sexual behavior, the defendant must inform the court out of the hearing of the jury prior to
introducing any such evidence or asking any such question. After this notice, the court shall
conduct an in camera hearing, recorded by the court reporter, to determine whether
the proposed evidence is admissible under paragraph (b) of this rule. The court shall
determine what evidence is admissible and shall accordingly limit the questioning. The
defendant shall not go outside these limits or refer to any evidence ruled inadmissible in
camera without prior approval of the court without the presence of the jury. (12)


 The court of appeals's interpretation of Rule 412 is based, in part, on the language of its federal
counterpart. (13) The court of appeals observed that the federal rule explicitly confers on the parties a right
to participate in the in camera hearing and reasoned that the same was true of the Texas rule because the
state rules of evidence are patterned after the federal rules. (14) The State points out that, unlike the federal
rule, the state rule contains no explicit direction to include the parties in the in camera hearing and argues
that the textual difference between the federal and state rules calls for a divergent interpretation. 

 But both arguments flow from a faulty premise: the assumption that Texas's Rule 412 was patterned
after its federal counterpart. Federal Rule 412 was not a part of the Federal Rules of Evidence when those
rules were first enacted. Rather, it was added by Congress in 1978. (15) Texas had enacted its own "rape
shield" statute three years earlier, in 1975. (16) That statute included what was clearly the precursor to Rule
412(c), with nearly identical wording. (17) Because Rule 412(c) was not patterned after its federal
counterpart, a comparison of the wording is, at best, of limited value.

 The difference between the federal and state rules aside, the State contends that the absence of
explicit direction in the Texas rule to include the parties in the in camera hearing is significant. The State
observes contrasting language in Texas Rule of Evidence 508 that requires the parties to be excluded from
an in camera proceeding. (18) The court of appeals cited this provision in support of its holding, (19) and
indeed, it could be argued that, if this Court wished to exclude the parties from a Rule 412 in camera
hearing, we could have explicitly said so. The State contends, however, that Rule 412's silence indicates
an intent to confer discretion upon the trial court in determining whether to admit the parties to the hearing
while Rule 508 mandates that the parties be excluded. But there is another difference between Rule 412
and Rule 508: the in camera procedure in Rule 412 is referred to as a "hearing." Hearings are ordinarily
adversarial. There are many situations in which an in camera procedure is clearly intended to take place
without the parties, but typically that procedure is referred to as an in camera "inspection," "review,"
"showing," "determination" or, in the case of Rule 508, "disclosure." (20) Rule 412 aside, other situations in
which the in camera procedure is specified as a "hearing" appear to contemplate the attendance of the
parties. (21) And in the child-custody arena, one statute explicitly grants the trial judge discretion to
determine whether to allow a party in an "in chambers" interview with the child. (22) In view of these things,
we do not find the State's contention regarding Rule 412's language to be particularly persuasive. 

 What we do find persuasive, however, is this Court's interpretation of the precursor statute,
§21.13. In Allen v. State, we upheld the constitutionality of this provision against a Confrontation Clause
challenge. (23) In doing so, we discussed a North Carolina decision, State v. Fortney, which upheld its own
rape-shield provision. (24) We quoted extensively from the Fortney opinion's language, which included a
statement that past sexual history could be litigated at "an in camera hearing where opposing counsel may
present evidence, cross-examine witnesses, and generally attempt to discern the relevance of proffered
testimony in the crucible of an adversarial proceeding away from the jury." (25) We commented that, while
the North Carolina statute "is not totally like §21.13, it is similar in many respects and the language in
Fortney is here instructive." (26) After discussing Fortney, we further stressed the importance of balancing
the victim's privacy interests with the confrontation right of the defendant by having the trial court hold a
hearing that gives the defendant the opportunity to demonstrate the admissibility of the evidence: 

The constitutional right to confront adverse witnesses is fundamental and is of such
importance that a State's interest in protecting a certain class of witnesses from
embarrassment must fall before the right of confrontation and cross-examination. Thus a
statute that purports to prohibit completely the introduction of the victim's consensual
sexual activity with persons other than the defendant is unconstitutional unless given a
judicial gloss requiring a hearing out of the jury's presence so that the defendant, upon
motion, may be given an opportunity to demonstrate that due process requires the
admission of such evidence because probative value in the context of that particular case
outweighs its prejudicial effect on the prosecutrix. (27) 


In making these comments, we cited the New Hampshire case of State v. Howard. (28) A review of
Howard reveals that our comments were a close paraphrase of the language in that case. (29) The Howard
opinion went on to more fully describe the procedure to be followed. (30) The Supreme Court of New
Hampshire explained that the victim's right to privacy was protected "at least to the extent that hearings
held on the admissibility of the victim's prior sexual activity may, upon request of the victim and in the
exercise of sound discretion by the trial justice, be closed to those not party to the proceeding. Such
pretrial procedures enable the court to balance and safeguard the rights of all the parties as applied to the
facts of a particular case and avoid unnecessary prejudice to either the victim or the accused." (31) From the
comments in Allen, and its reliance on Fortney and Howard, we conclude that the Allen decision
construed §21.13 narrowly to avoid a constitutional violation and that, under this narrowing construction,
the trial court was empowered to exclude spectators, but not the parties, from the in camera admissibility
hearing. (32)

 Because Rule 412 essentially lifted the pertinent language from §21.13, Allen's interpretation of
the statute logically applies to the rule as well. Moreover, Allen was decided just two weeks before the
adoption of the Texas Rules of Criminal Evidence, of which Rule 412 was a part, and the Court even
mentioned the proposed rules elsewhere in the opinion. (33) Given those circumstances, we believe this result
was likely the Court's intent in patterning Rule 412(c) on the statutory language. (34)

 The State also argues that the policy interest behind Rule 412 of protecting the victim's privacy
requires interpreting the rule to allow the trial court to exclude the defendant and his attorney from the
hearing. But, as we recognized in Allen, the victim's privacy interest must be balanced against the
defendant's right to confrontation. Rule 412 balances those interests by closing the hearing to spectators,
so that only a minimum number of people - the witness, the parties and their attorneys, the judge, and the
court reporter - are privy to the information revealed. 

 We conclude that the in camera proceeding contemplated by Rule 412 is an adversarial hearing
at which the parties are present and the attorneys are permitted to question witnesses. We overrule the
State's third and fourth grounds for review. Given our disposition of those grounds, we need not reach the
State's first two grounds relating to the preservation of constitutional error, and those are dismissed.

 B. The proper remedy


 Texas Rule of Appellate Procedure 44.4 provides:

Remediable Error of the Trial Court.


 (a) Generally. A court of appeals must not affirm or reverse a judgment or dismiss an
appeal if:


 (1) the trial court's erroneous action or failure or refusal to act prevents the proper
presentation of a case to the court of appeals; and


 (2) the trial court can correct its action or failure to act.


 (b) Court of appeals direction if error remediable. If the circumstances described
in (a) exist, the court of appeals must direct the trial court to correct the error. The court
of appeals will then proceed as if the erroneous action or failure to act had not occurred. (35)


Under this rule, if a trial court's error prevents the proper presentation of the case to the appellate court
and that error can be remedied (without requiring an entire new trial or new punishment hearing), then the
appellate court must direct the trial court to remedy the error so that the appellate court will be in a position
to evaluate the appeal properly. We have applied this rule to a trial court's refusal to permit a defendant
to make an offer of proof, (36) a trial court's failure to conduct a proper Batson hearing, (37) and a trial court's
failure to make findings of fact that it was required by law to make. (38)

 Appellant attempts to distinguish his case from those cases by claiming that the present case
involves the denial of counsel at a critical stage of trial. In making this claim, he relies upon several cases
that hold that the complete denial of counsel at a critical stage of trial results in a presumption of prejudice. (39) 
We need not address whether the trial court's conduct in the present case constituted the "complete denial
of counsel at a critical stage of the proceedings," however, because the principle appellant recites is simply
inapplicable. There is a difference between saying that the prejudice suffered warrants some sort of remedy
and saying what kind of remedy must be afforded. For example, a complete denial of counsel that occurs
only at the punishment proceedings would be presumed prejudicial, but that presumption does not mean
the defendant would be entitled to an entire new trial (i.e. on both guilt and punishment). Because the scope
of the prejudice was clearly limited to the punishment phase, the defendant in this hypothetical would be
entitled only to a new punishment hearing. Likewise, when the trial court errs in refusing to permit the
defendant to fully litigate the admissibility of a particular type of evidence, the scope of the prejudice flowing
from such an error is limited. That the defendant was denied the ability to properly litigate admissibility
does not mean that the trial court's admissibility determination was incorrect. What it does mean is that
the appellate court may not be able to intelligently determine the correctness of the trial court's admissibility
determination. The solution, then, is to afford the defendant the opportunity to perfect the record, which
then enables the appellate court to review the admissibility issue properly.

 Appellant also relies upon state cases that hold that the supplementation rules cannot be used to
replay a hearing or to create a record that was never made. (40) He contends that Hutchinson stands for the
proposition that a party cannot "replay" a hearing that was already held in order to "fix" the hearing. He
further cites that Ramirez, Solomon, and Berry for the proposition that an appellate court cannot use the
rules of appellate procedure to create a new record.

 Appellant fails to appreciate the difference between the pertinent provisions in Rule 34, which relate
to supplementation, and those in Rule 44, which provide a remedy for error. Appellant is correct that the
supplementation rules, Rules 34.5(c) and 34.6(d), cannot be used to create a new record. (41) Those rules
exist to allow appellate courts to supplement the appellate record with matters that were part of the trial
record but, for whatever reason, have not been forwarded to the appellate court. (42) Rule 44.4, by contrast,
is designed to effect the creation of a new record. When a trial court has erroneously withheld information
necessary to evaluate a defendant's claim on appeal (e.g. failure to file required findings of fact) or has
prevented the defendant from submitting information necessary to evaluate his claim (e.g. refusing to permit
an offer of proof), the appellate court is directed to step in and order the trial court to correct the situation. 
The key to Rule 44.4 is that there must be an error that the appellate court can correct. (43) And if the error
in question is subject to the usual rules of procedural default, then it must have been preserved by
objection. (44) The supplementation rules found in Rule 34 do not require any showing of error, but that is
because their purpose is much more limited than the remedial function of Rule 44.4.

 Appellant reads the state "supplementation" cases too broadly. All of the cases upon which he
relies trace their lineage to Berry. (45) But that case recognized the distinction between correcting an error
and trying to inject matters into the record where no error was present. With regard to findings of fact, we
explained that an appellate court can order a trial court to make findings of fact when the law imposes an
affirmative duty to do so, but an appellate court cannot order such findings when there is no legal
requirement. (46) Berry in turn relied upon Williams. (47) In Williams, this Court expressly added a caveat to
its holding that the supplementation rules cannot be used to create a new record (involving in that case the
court reporter's failure to record certain proceedings):

The foregoing discussion does not mean that a defendant can never obtain relief if the court
reporter fails to record certain proceedings. But, to preserve error on such a claim, a
defendant must object before the trial court to the court reporter's failure to do so. (48)


In other words, the defendant must show error upon which an appellate court can act, which error can then
be remedied by an order under Rule 44.4. (49) 

 Here, the court of appeals determined that appellant was deprived of his right to participate in the
rule 412 hearing. The purpose of allowing defense participation in the hearing is to give the defendant the
opportunity to substantiate his claim that the victim's prior sexual history is admissible. The proper remedy
was to abate the appeal and remand the case to the trial court to afford the defendant an adversarial hearing
in which he would have an opportunity to make that showing. Once that was done, the appellate court
would then be in a position to intelligently review the issue of whether the prior sexual history evidence was
admissible. The court of appeals followed this procedure in the present case, and it was entirely correct
in doing so. Appellant's first ground for review is overruled.

C. The hearing 


 Finally, we address appellant's contention regarding how the hearing was conducted. Defense
counsel's questions regarding child custody, the victim's alcohol use, and whether the victim was taking
medication for bipolar disorder were not inquiries into the victim's past sexual history and did not fall within
the trial court's order at trial prohibiting questioning by defense counsel. Indeed, some evidence relating
to these topics was elicited in front of the jury or in an offer of proof. Those questions therefore fell outside
the scope of the court of appeals's remand order, and the trial court did not err to exclude them. Nor do
we see any error in refusing to permit the victim to read from documents that had already been included
in the record. That leaves counsel's attempt to question Nurse Gann regarding any link between bipolar
disorder and sexual activity. It is not clear that such a question falls within the scope of Rule 412. 
Assuming arguendo that it does, appellant failed to preserve error with regard to that topic. Appellant
never told the trial court at trial that he wished to ask Nurse Gann such a question, and it at least seems
questionable whether she would even be qualified to give an answer. (50) Finally, we agree with the court of
appeals that appellant failed to preserve any claim with regard to the request for continuance and the
request to recall Nurse Gann because appellant failed to submit his proposed questions. (51) We overrule
appellant's third ground for review.

III. CONCLUSION


 We hold that the in camera hearing required by Rule 412 is an adversarial hearing where the
parties are present and the attorneys are afforded the opportunity to question witnesses and present
evidence. We further hold that the remedy for a trial court's failure to follow this requirement is to abate
the appeal and remand the case to the trial court to conduct (retrospectively) a proper hearing. Finally, we
hold that the trial court conducted a proper hearing on remand. Consequently, we affirm the judgment of
the court of appeals.

Delivered: April 25, 2007

Publish 










 



 
1. LaPointe v. State, No. 03-03-00460-CR, slip op. at 8-20 (Tex. App.-Austin, Mar. 17,
2005).
2. Id. at 21-22, 22 n.16. The court of appeals' disposition, "proceedings consistent with this
opinion" is a little unclear, but the footnote suggests that the court of appeals meant by this a new trial. 
See id.
3. LaPointe v. State, 166 S.W.3d 287, 289 (Tex. App.-Austin 2005, pet. dism'd). 
4. Id. at 300-301.
5. Although not relevant to our disposition, we observe that the trial judge's rulings appeared to
be even-handed. Several times the judge sustained defense objections to the prosecutor's questions,
including an attempt by the prosecutor to elicit information about appellant's prior sexual history.
6. LaPointe v. State, 196 S.W.3d 831, 834-835 (Tex. App.-Austin 2006).
7. Id.
8. Id. at 836.
9. Id. at 836-837. The correctness of the court of appeals's ultimate holding with regard to the
admissibility of the evidence is not before us.
10. Id. at 837-839.
11. Appellant's second ground, which we refused, contended that appellant's pending petition
for discretionary review (later dismissed) deprived the trial court of jurisdiction to proceed with the
retrospective hearing. 
12. Tex. R. Evid. 412(c)(bold in original, italics added).
13. LaPointe, 166 S.W.3d at 293-294.
14. Id. (citing Fed. R. Evid. 412(c)(2)("At such hearing the parties may call witnesses, including
the alleged victim, and offer relevant evidence")).
15. P.L. 95-540, §2(a), Oct. 28, 1978, 92 Stat. 2046.
16. Former Tex. Pen. Code §21.13; Acts 1975, 64th Leg., ch. 203, §3.
17. Former §21.13(b). Other than minor, nonsubstantive variations in wording, the only
difference between the modern Texas rule and its predecessor appears to be that the modern rule
embraces "documentary evidence" in addition to testimony.
18. Tex. R. Evid. 508(c)(3).
19. LaPointe, 166 S.W.3d at 294.
20. See Tex. Civ. Prac. & Rem. Code §154.073(e)("determine")(confidentiality of certain
records and communications); Tex. Fam. Code §261.201(b)(3)("review")(confidentiality and
disclosure of information); Tex. Fin. Code §59.006(d)("inspection")(discovery of customer records at
a financial institution); Tex. Gov't Code §414.008(c)("inspection")(crime stoppers tips); Tex. Health
& Safety Code §773.092(d)("determination")(confidential medical information); Weisel Enterprises,
Inc. v. Curry, 718 S.W.2d 56, 58 (Tex. 1986)("inspection," "review")(documents allegedly protected
by attorney-client or work product privilege); Rule 508(c)(3).
21. Tex. Civ. Prac. & Rem. Code § 172.112 ("hearing," "meeting")(arbitration); Tex. Hum.
Res. Code §36.107(c)("hearing")(settlement with defendant in a medicaid fraud suit). 
22. Tex. Fam. Code §153.009(e)(court "may" permit party to be present). See also In re
Chu, 134 S.W.3d 459, 467 (Tex. App.-Waco 2004)(referring to an "in camera" interview with the
child); Patterson v. Brist, 2006 Tex. App. LEXIS 9281, *1 (Tex. App.-Houston [1st Dist.] 2006,
pet. for review filed)(same). 
23. 700 S.W.2d 924, 932 (Tex. Crim. App. 1985.)
24. Id. at 930-931.
25. Id. at 931 (quoting State v. Fortney, 301 N.C. 31, 269 S.E.2d 110 (N.C. 1980)).
26. Id.
27. Id. at 932.
28. Id.
29. See Howard, 121 N.H. 53, 58-59, 426 A.2d 457, 460-461 (1981).
30. Id. at 59, 426 A.2d at 461.
31. Id. (emphasis added).
32. The State criticizes Allen's reliance upon Fortney on the ground that the North Carolina
statute explicitly provided the right to an adversarial in camera hearing. But the State does not address
Allen's reliance upon Howard, a case decided under a statute that made no reference to a hearing at
all. See Howard, 121 N.H. at 57, 426 A.2d at 459 (quoting RSA 632A:6). As the above discussion
shows, the Allen court seemed to be aware that there were differences between the statutes in North
Carolina and Texas but was drawing upon general principles in fashioning what it considered to be an
appropriate narrowing construction for the Texas provision.
33. Allen was decided on December 4, 1985, and the Rules of Criminal Evidence were
adopted on December 18, 1985. For citation to proposed Rule 412, see 700 S.W.2d at 928 n.3, 930
n.5.
34. §21.13 was later renumbered to §22.065. Acts 1983, 68th Leg., p. 5315, ch. 977, § 4. 
Pursuant to legislative authorization, §22.065 was repealed by the Texas Rules of Criminal Evidence. 
Acts 1985, 69th Leg., ch. 685, §9(b); former Tex. Rev. Civ. Stat. art. 1811f, §9(b)(1). Under the
repealer statute, this Court was authorized to create a rule that differed from the statutory provision. 
State v. Hardy, 963 S.W.2d 516, 520-523 (Tex. Crim. App. 1997).
35. Tex. R. App. P. 44.4.
36. Spence v. State, 758 S.W.2d 597, 599-600 (Tex. Crim. App. 1988).
37. See Hutchinson v. State, 86 S.W.3d 636, 638 n. 1 (Tex. Crim. App. 2002)(citing cases).
38. See id. (citing cases).
39. See e.g. United States v. Cronic, 466 U.S. 648, 659 (1984); Strickland v. Washington,
466 U.S. 668, 692(1984).
40. Ramirez v. State, 104 S.W.3d 549 (Tex. Crim. App. 2003); Hutchinson, 86 S.W.3d 636;
Solomon v. State, 49 S.W.3d 356 (Tex. Crim. App. 2001); Berry v. State, 995 S.W.2d 699 (Tex.
Crim. App. 1999).
41. Ramirez, 104 S.W.3d at 550 (citing Berry); Solomon, 49 S.W.3d at 365 (citing Berry);
Berry, 995 S.W.2d at 702 and 702 n. 5 (citing Williams v. State, 937 S.W.2d 479, 487 (Tex. Crim.
App. 1996)). 
42. Berry, 995 S.W.2d at 702 n. 5.
43. See id. at 701-702.
44. See Williams, 937 S.W.2d at 487. Of course, any failure to preserve error would be held
against the appealing party and would likely be fatal to his entire claim.
45. Hutchinson, 86 S.W.3d at 637; cases cited in footnote 41.
46. Berry, 995 S.W.2d at 701-702. Although Berry refers to requiring findings as an action
that may be authorized by Rule 34.5(c)(2), we note that that subsection refers only to the clerk's duty
to forward findings that are required by law: "
If the appellate court . . .orders the trial court to prepare
and file findings of fact and conclusions of law as required by law . . . the trial court clerk must prepare,
certify, and file in the appellate court a supplemental clerk's record containing those findings and
conclusions." Rule 34.5(c)(2). The source of the appellate court's authority to order the findings is
Rule 44.4. 
47. See footnote 41.
48. 937 S.W.2d at 487.
49. Thus, we disagree with appellant's contention that Hutchinson stands for the proposition
that a party cannot "replay" a hearing that was already held in order to "fix" the hearing. In
Hutchinson, the defendant made a prima face case of discrimination as to five veniremembers, but a
Batson hearing was held on only four of them. 86 S.W.3d at 639. A "replay" of the hearing with
regard to the first four veniremembers was improper, not because "replays" are invariably improper,
but because there was no showing that there was any error - with regard to those four veniremembers
- in the conduct of the original hearing. 
50. The record shows that appellant was well aware at trial of the victim's bipolar disorder and
her alleged involvement with "multiple sex partners." So he cannot claim that the proffered question
resulted from unexpected developments at the retrospective hearing.
51. Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2.